**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

UPSTATE NEW YORK ENGINEERS
HEALTH FUND, by Daniel P. Harrigan, as
Administrator; UPSTATE NEW YORK ENGINEERS
PENSION FUND, by Daniel P. Harrigan, as
Administrator; UPSTATE NEW YORK
ENGINEERS S.U.B. FUND, by Daniel P.
Harrigan, as Administrator; UPSTATE NEW
YORK ENGINEERS TRAINING FUND, by
Theron Hogle and Eugene Hallock, as Trustees;
CENTRAL PENSION FUND OF THE
INTERNATIONAL UNION OF OPERATING
ENGINEERS AND PARTICIPATING EMPLOYERS,
by Michael R. Fanning, as Chief Executive Officer;
LOCAL 106 TRAINING AND APPRENTICESHIP
FUND, by Daniel J. McGraw and Eugene Hallock,
as Trustees; UPSTATE NEW YORK OPERATING
ENGINEERS, LOCAL UNION NO. 158, by
Theron Hogle, as President,

          **Plaintiffs,**

 vs.            5:13-cv-01434
               (MAD/ATB)

**WALLACE ABE RANSOM, Individually
and d/b/a Running Deer Corporation;
RUNNING DEER CONSTRUCTION
CANADA CORP.,**

         **Defendants.**
_____

**APPEARANCES:**         **OF COUNSEL:**

**BLITMAN & KING LLP**      **JENNIFER A. CLARK, ESQ.**
Franklin Center
443 North Franklin Street
Suite 300
Syracuse, New York 13204-1415
Attorneys for Plaintiffs

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiffs Upstate New York Engineers Health Fund, Upstate New York Engineers Pension Fund, Upstate New York Engineers S.U.B. Fund and Upstate New York Engineers Training Fund (collectively, the "Engineers Funds"), Central Pension Fund of the International Union of Operating Engineers and Participating Employers (the "Central Pension Fund"), Local 106 Training and Apprenticeship Fund (the "Union Training Fund"), and Upstate New York Operating Engineers, Local Union No. 158 (the "Union") bring this action alleging that Defendants Wallace Abe Ransom, individually and doing business as Running Deer Construction, and Running Deer Construction Canada Corporation ("Running Deer Canada") violated the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq., and the Labor-Management Relations Act of 1947, as amended, 29 U.S.C. §§ 185(a) et seq., by failing to timely remit fringe benefit contributions and deductions. *See* Dkt. No. 1. On March 11, 2014, Plaintiffs moved for an entry of default as to Defendant Running Deer Canada, which the Clerk of the Court entered on March 12, 2014. *See* Dkt. Nos. 10, 12. On March 18, 2014, Plaintiffs moved for an entry of default as to Defendant Ransom, which the Clerk of the Court entered on March 24, 2014. *See* Dkt. Nos. 14, 15.

Presently before the Court is Plaintiffs' motion for entry of a default judgment against Defendants pursuant to Rule 55(b) of the Federal Rules of Civil Procedure. Defendants have not opposed the motion or otherwise appeared in this action.

## II. DISCUSSION

### A. Standard of Review

"Generally, 'Federal Rule of Civil Procedure 55 provides a two-step process that the Court must follow before it may enter a default judgment against a defendant.'" *United States v. Simmons*, No. 5:10-CV-1272, 2012 WL 685498, *2 (N.D.N.Y. Mar. 2, 2012) (quoting *Robertson*

*v. Doe*, No. 05-CV-7046, 2008 WL 2519894, *3 (S.D.N.Y. June 19, 2008)). "'First, under Rule 55(a), when a party fails "to plead or otherwise defend . . . the clerk must enter the party's default."'" *Id.*; *see also* Fed. R. Civ. P. 55(a). "'Second, pursuant to Rule 55(b)(2), the party seeking default is required to present its application for entry of judgment to the court.'" *Id.* "'Notice of the application must be sent to the defaulting party so that it has an opportunity to show cause why the court should not enter a default judgment.'" *Id.*; *see also* Fed. R. Civ. P. 55(b)(2).

"When a default is entered, the defendant is deemed to have admitted all of the well-pleaded factual allegations in the complaint pertaining to liability." *Bravado Int'l Group Merch. Servs., Inc. v. Ninna, Inc.*, 655 F. Supp. 2d 177, 188 (E.D.N.Y. 2009) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). "While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974) (citations omitted); *see also Bravado Int'l*, 655 F. Supp. 2d at 189-90 (citation omitted). "[E]ven upon default, a court may not rubber-stamp the non-defaulting party's damages calculation, but rather must ensure that there is a basis for the damages that are sought." *Overcash v. United Abstract Group, Inc.*, 549 F. Supp. 2d 193, 196 (N.D.N.Y. 2008) (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). "The burden is on the plaintiff to establish its entitlement to recovery." *Bravado Int'l*, 655 F. Supp. 2d at 189 (citing *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158). "While 'the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing.'" *Id.* at 190 (citation omitted).

**B.    Liability**

In the present matter, the complaint and summons were properly served on Defendant Running Deer Canada on January 23, 2014 and on Defendant Ransom on February 21, 2014. *See* Dkts. No. 7, 13. The Clerk of the Court entered default against both Defendants. *See* Dkts. No. 14, 15. Defendants are not infants, incompetents, or in the military. *See* Dkt. No. 13 at 2. Thus, the Court finds that Plaintiffs have complied with the requirements for the Court to grant Plaintiffs' motion as to liability under Local Rule 55.2(b) and, as such, Defendants have defaulted within the meaning of Rule 55(b)(2) of the Federal Rules of Civil Procedure. Therefore, Defendants are deemed to have admitted the following factual allegations for the purposes of establishing liability. *See Bravado Int'l*, 655 F. Supp. 2d at 188; *see also United States v. Beam*, No. 6:12-CV-0087, 2012 WL 1802316 (N.D.N.Y. May 17, 2012) ("By failing to answer plaintiff's complaint or oppose this motion, defendant has effectively conceded that [it] is bound by the terms of the [Agreement] [it] entered into with plaintiff. . . .").

Pursuant to Section 515 of ERISA,

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. At all times relevant to the instant action, Defendants were bound to collective bargaining agreements (the "CBAs") with the Union, Plaintiffs' declarations of trust (the "Trusts"), and the Engineers Funds' joint collections policy (the "Collections Policy"). *See* Dkt. No. 1 at ¶¶ 20-21. The CBAs obligate Defendants to remit contributions to the Engineers Funds, the Central Pension Fund, and the Union Training Fund (collectively, the "Funds") for each hour worked by Defendants' employees who performed work covered by the CBAs. *Id.* at ¶¶ 22-23. The CBAs also obligate Defendants to deduct stipulated sums from each of their employees'

4

wages for each hour worked and to pay said amounts to the Union for union dues, Voluntary Political Action Fund monies, Defense Fund monies, and Political Action Fund monies. *Id.* at ¶ 24. Additionally, the CBAs, Trusts, and Collections Policy require Defendants to file monthly remittance reports and remit their contributions by the fifteenth day of each month. *Id.* at ¶ 25. Defendants failed to remit contributions owed to the Funds and deductions owed to the Union for hours worked by employees covered by the CBAs for the period from October 2011 through March 2012. *Id.* at ¶ 27.

Further, Defendants were parties in interest with respect to the Funds, and by withholding the contributions and deductions from the Funds, Defendants used the Funds' assets for their own personal use and benefit in violation of ERISA. *See id.* at ¶¶ 39-44.[1] Morever, as a result of work performed under the CBAs, Defendants received sums of money from construction projects, which were to be used to pay the cost of labor and benefits of the employees who performed the work. *Id.* at ¶¶ 52-53. Thus, Defendants were fiduciaries within the meaning of ERISA, and violated their fiduciary duties by failing to remit the contributions and deductions to Plaintiffs. *Id.* at ¶ 59.[2]

Plaintiffs also allege that Defendant Ransom exercised discretion and control over Defendants' assets, determined which creditors Defendants would pay, commingled plan assets with Defendants' assets, and decided how much and when to pay contributions and deductions to

---

[1] For the purposes of ERISA, a "party in interest" includes any plan fiduciary, as well as "an employee organization any of whose members are covered by such plan." 29 U.S.C. § 1002(14).

[2] Under ERISA, "a person is a fiduciary with respect to a plan to the extent . . . he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(a).

5

Plaintiffs, thereby making Defendant Ransom individually liable for the unpaid contributions. *Id.* at ¶¶ 57-66. Under ERISA, in order to establish that an individual is personally liable for unpaid contributions as a fiduciary, a plaintiff must show that "(1) the unpaid contributions were plan assets and (2) [the defendant] exercised a level of control over those assets sufficient to make him a fiduciary." *In re Halpin*, 566 F.3d 286, 289 (2d Cir. 2009). Here, the Trusts state that "[t]itle to all monies paid into and/or *due and owing* to [Plaintiffs] vested in and remain[s] exclusively in the Trustees" and that "outstanding and withheld contributions constitute plan assets." Dkt. No. 1 at ¶ 40 (emphasis added). Therefore, the unpaid contributions were plan assets. *See Trs. of the Road Carriers Local 707 Welfare Fund v. Goldberg*, No. 08-CV-0884, 2009 WL 3497493, *3 (E.D.N.Y. Oct. 28, 2009) ("While unpaid employer contributions are not ordinarily assets of the plan, the parties to an agreement are free to provide otherwise.") (citations omitted); *see also Halpin*, 566 F.3d at 290-91 (indicating that an employer and plan trustees were free to contractually provide that unpaid contributions would be assets of the plan). Defendant Ransom's responsibilities and use of plan assets as described by Plaintiffs demonstrate sufficient authority and control to establish him as a fiduciary. Therefore, Plaintiffs have established that Defendant Ransom may be held personally liable under ERISA.

Plaintiffs have established through their complaint, their papers in support of the instant motion, and the exhibits thereto that they are entitled to judgment in their favor. Plaintiffs moved for partial summary judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, seeking judgment only on their first, third, and fourth causes of action. *See* Dkt. No. 19-1 at 3.[3]

---

[3] Rule 54(b) provides that "[w]hen an action presents more than one claim for relief . . . the court may direct entry of a final judgment as to one or more, but fewer than all, claims . . . only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. Pro. 54(b).

However, Plaintiffs' second "cause of action" requests an order requiring Defendants to produce their books and records for an audit, while Plaintiffs' fifth "cause of action" seeks a permanent injunction enjoining Defendants from further violations of ERISA. *See* Dkt. No. 1 at ¶¶ 30-35, 68-75. These sections of Plaintiffs' complaint do not comprise independent claims for relief, but rather demands for specific types of relief available for Defendants' violations of ERISA stated in Plaintiffs' first, third, and fourth causes of action. Thus, the result of awarding Plaintiffs default judgment on their first, third, and fourth causes of action is that no claims for relief remain. Accordingly, because Plaintiffs have established that they are entitled to judgment in their favor on these claims, the Court grants Plaintiffs default judgment as to liability in its entirety. The Court will address Plaintiffs' requested forms of relief below.

**C. Damages**

The civil enforcement provision of ERISA provides that

> [i]n any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan--
> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of--
> (i) interest on the unpaid contributions, or
> (ii) liquidated damages provided for under the plan
> in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). It further provides that "[f]or purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26." *Id.*

7

In their motion for default judgment, Plaintiffs seek $66,500.76 in unpaid contributions and deductions, $28,284.56 in interest for the period from November 15, 2011 through May 20, 2014, $27,069.92 in liquidated damages, and $9,608.94 in attorneys' fees, paralegal fees, and costs.  In support of these calculations of damages, Plaintiffs have attached to its motion the following: (1) affidavits of Linda L. DeMacy, a legal assistant to Plaintiffs' counsel, Michael R. Fanning, chief executive officer of the Central Pension Fund, Daniel P. Harrigan, administrator of the Upstate New York Engineers Health, Pension, and S.U.B. Funds, Daniel J. McGraw, business manager of the Union and a trustee of the Upstate New York Engineers Training Fund and the Union Training Fund; (2) the Trusts; (3) the Collections Policy; (4) the CBAs; (5) Defendants' remittance reports to the Funds for the period October 2011 through March 2012; and (6) calculations of damages at the applicable rates of interest and liquidated damages.  Plaintiffs also submitted supplemental briefing regarding their damages calculations at the Court's request.  The Court finds that a hearing to ascertain the damages in this case is unnecessary in view of the affidavits and documentary evidence submitted by Plaintiffs.

Plaintiffs' submissions show that Plaintiffs are entitled to recover the amount of $66,500.76 in unpaid employee benefit contributions and deductions due for the period from October 2011 through March 2012.  Plaintiffs are also entitled to interest on the unpaid contributions at the rates provided by the Trusts and CBAs or, where the Trusts and CBAs do not provide a rate, at the rate prescribed by 26 U.S.C. § 6621.  *See* 29 U.S.C. § 1132(g)(2)(B).  Pursuant to the Collections Policy, Trusts, and CBAs, interest on unpaid contributions to the Engineers' Funds is calculated at a rate of two percent (2%) per month, *see* Dkt. No. 19-5 at 111; interest on unpaid contributions to the Central Pension Fund is calculated at the rate of nine percent (9%) per annum, *see* Dkt. No. 22 at 11; interest on unpaid Union Training Fund

contributions is calculated at the rate prescribed by ERISA; *see* Dkt. No. 19-6 at 39; and interest on unpaid Union deductions is calculated at the rate prescribed by ERISA, *see* Dkt. No. 22-1 at ¶ 4.[4] Plaintiffs seek interest in the amount of $23,602.68 on unpaid contributions to the Engineers' Funds, $3,271.66 on unpaid contributions to the Central Pension Fund, and $165.53 on unpaid contributions to the Union Training Fund, which comports with the applicable interest rates. Plaintiffs are also entitled to interest in the amount of $414.90 on unpaid Union deductions, and are therefore entitled to a total of $27,454.77 in interest for the period from November 15, 2011 through May 20, 2014.

Additionally, Plaintiffs are entitled to liquidated damages equal to the greater of the interest on the unpaid contributions or the liquidated damages provided for under the Trusts and CBAs in an amount that does not exceed twenty percent (20%) of the unpaid contributions. *See* 29 U.S.C. § 1132(g)(2)(c). The Collections Policy and Central Pension Fund Trust provide for liquidated damages in the amount of twenty percent of the delinquent Engineers Funds and Central Pension Fund contributions. *See* Dkt. No. 19-4 at 10; Dkt. No. 19-5 at 111. Plaintiffs are

---

[4] Plaintiffs acknowledge that the CBAs between Defendants and the Union do not specify a rate of interest to be applied to unpaid Union deductions, but argue that the New York state statutory interest rate of nine percent (9%) per annum should be applied rather than the interest rate prescribed by ERISA. *Id.* Plaintiffs' argument is unavailing. The civil enforcement provision of ERISA clearly states that in the absence of an interest rate provided under the applicable plan, the rate of interest on unpaid contributions "shall be . . . the rate prescribed under section 6621 of Title 26." 29 U.S.C. § 1132(g)(2). The cases cited by Plaintiffs in which the court did not apply the ERISA statutory interest rate involved the assessment of interest on untimely contributions that did not qualify as "unpaid contributions" under ERISA, and thus were not governed by 29 U.S.C. § 1132(g)(2). *See, e.g.*, *Operating Eng'rs Local 139 Health Benefit Fund v. Gustafson Constr. Corp.*, 258 F.3d 645, 654-55 (7th Cir. 2001) (holding that 29 U.S.C. § 1132(g)(2) did not apply to late contributions the defendant paid before the plaintiff brought suit); *Mich. Carpenters Council Health & Welfare Fund v. C.J. Rogers, Inc.*, 933 F.2d 376, 389 (6th Cir. 1991) (discussing the availability of liquidated damages on delinquent contributions paid prior to judgment and therefore not governed by 29 U.S.C. § 1132(g)(2)). Here, Plaintiffs seek interest on unpaid contributions that fall within 29 U.S.C. § 1132(g) and, therefore, are entitled to interest at the rate prescribed by 26 U.S.C. § 6621.

therefore entitled to their requested liquidated damages of $27,069.92, comprising the interest on the unpaid Union Training Fund contributions and the greater of the interest on or twenty percent of the unpaid Engineers Funds and Central Pension Fund contributions.

Plaintiffs are also statutorily entitled to recover reasonable attorneys' fees and costs associated with their efforts to collect the delinquent contributions and deductions. *See* 29 U.S.C. § 1132(g)(2)(D). Plaintiffs request $6,148.55 in attorneys' and paralegals' fees and $3,460.39 in costs. Plaintiffs submitted detailed time records, which the Court has reviewed and finds reasonable, which demonstrate that 27.87 attorney and paralegal hours were spent on this matter. Plaintiffs request reimbursement of attorney hours at a rate of $270 per hour for work performed by counsel, $152-154 per hour for work performed by legal secretaries, and $147 per hour for work performed by counsel's legal assistant.

In determining the reasonableness of attorneys' fees rates, the Second Circuit has held that the court is "to bear in mind all of the case-specific variables that [the courts] have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate," which is "the rate a paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). The relevant factors for the court to consider include the complexity and difficulty of the case, the resources required for effective prosecution of the case, the case's timing demands, the attorney's interest in achieving the ends of the litigation, the nature of representation, and the type of work involved in the case. *See id.* at 184, 184 n.2. In a similar case involving the recovery of unpaid contributions and liquidated damages, this Court noted that "[d]ue to the nature of the claims, a substantial amount of expertise, time, and labor is required to pursue the claims successfully" and that Plaintiffs' counsel's firm "has extensive experience and expertise in this field of litigation." *I.B.E.W. Local*

10

*910 Welfare, Annuity & Pension Funds v. Grayco Elec., Inc.*, No. 7:12-CV-652, 2013 WL 495638, *4 (N.D.N.Y. Feb. 7, 2013). Nonetheless, the Court found that the reasonable fees in that case were the prevailing rates in the community of $210 per hour for experience attorneys and $80 per hour for paralegals. *Id.*; *see also Cent. N.Y. Laborers' Health & Welfare Fund v. Taylor*, No. 5:11-CV-688, 2012 WL 3201950, *3 n.3 (N.D.N.Y. Aug. 3, 2010) (collecting cases awarding attorneys' fees in actions to recover unpaid contributions under ERISA at said rates). Here, as in *Grayco*, Plaintiffs have not submitted evidence warranting a different result. Thus, the Court finds that the rates in *Grayco* are the reasonable fees in the case at bar.

Plaintiffs also seek reimbursement for costs in the amount of $3,460.39. The Court has reviewed Plaintiffs' itemized record of costs and finds it reasonable. Accordingly, the award of attorneys' fees is $4,188.70 (15.07 x $210 for attorneys Clark and Oliver's services and 12.8 x $80 for Ms. DeMacy, Ms. Senecal, and Ms. St. Fleur's services) plus $3,460.39 in costs for a total of $7,649.09 in attorneys' fees and costs.

In addition to the aforementioned amounts, Plaintiffs argue that Defendants must be compelled to produce their books and records for Plaintiffs' review and audit and to pay the costs of such audit, including attorneys' fees. Plaintiff also argue that the Court should retain jurisdiction and enter judgment in favor of Plaintiffs for any contributions and deductions that are determined to be due as a result of the audit, plus the applicable interest thereon, liquidated damages, and attorneys' fees and costs. The Collections Policy and Trusts provide that Defendants are required to produce their books and records for Plaintiffs' examination and audit and to pay the costs of such audit, including attorneys' and paralegal fees. *See* Dkt. No. 19-5 at 19-20, 112-13. Accordingly, the Court concludes that Plaintiffs are entitled to examine

Defendants' books and records for the time period from May 2011 to date and that Defendants must pay the associated costs and expenses.

Finally, Plaintiffs seek a permanent injunction restraining Defendants from breaching the CBAs and directing Defendants to perform their obligations to Plaintiffs under the CBAs, including to submit timely the required monthly remittance reports and contributions and deductions to Plaintiffs. Injunctive relief is available to Plaintiffs under ERISA. *See* 29 U.S.C. § 1132(g)(2)(E); *see also Beck v. Levering*, 947 F.2d 639, 641 (2d Cir. 1991) (holding that permanent injunctions are available as a remedy under ERISA in certain circumstances involving self-dealing by plan fiduciaries). However, the permanent injunction that Plaintiffs seek would do nothing to alter the parties' respective rights or obligations, as it would merely require Defendants to comply with obligations Defendants are already legally required to comply with. Accordingly, Plaintiffs' request for a permanent injunction is manifestly moot. *See Gesualdi v. Mack Excavation & Trailer Serv., Inc.*, No. CV 09-2502, 2010 WL 985269, *11 (E.D.N.Y. Feb. 12, 2010) (citing *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974)). Therefore, the Court denies Plaintiffs' request for a permanent injunction.

## IV. CONCLUSION

In light of the foregoing, the Court therefore

**ORDERS** that Plaintiffs' motion for entry of default judgment is **GRANTED**; and the Court further

**ORDERS** that Plaintiffs are awarded default judgment against Defendants for the sum of $128,674.54 including $66,500.76 in unpaid contributions and deductions, $27,454.77 in interest for the period from November 15, 2011 through May 20, 2014, $27,069.92 in liquidated damages, and $7,649.09 in attorneys' fees and costs; prejudgment interest and liquidated damages for the

period from May 21, 2014 through today's date at the rates provided for by 29 U.S.C. 1132(g)(2) and the Trusts and Collections Policy;[5] and interest thereon at the rate provided for by 28 U.S.C. § 1961(a); and the Court further

**ORDERS** that Defendants are required to produce their books and records for the period from May 2011 to date for Plaintiffs' review and audit, and to pay the cost and expense of such audit, including all attorneys' and paralegal fees and costs incurred in obtaining the audit; and the Court further

**ORDERS** that the Court shall retain jurisdiction in this matter until Plaintiffs complete their audit of Defendants' books and records; and the Court further

**ORDERS** that within **THIRTY (30) DAYS** of the completion of the audit, Plaintiffs shall move for entry of judgment against Defendants for any and all contributions and deductions that are determined to be due as a result of the audit, plus the applicable interest thereon, liquidated damages, costs and expenses of collection, and attorneys' and paralegal fees associated therewith; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Plaintiffs' favor.

**IT IS SO ORDERED.**

Dated: January 12, 2015
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge

---

[5] The interest rates Plaintiffs shall use in calculating prejudgment interest for the period from May 21, 2014 through the date of this judgment are as follows: (1) two percent (2%) per month for unpaid contributions to the Engineers' Funds; (2) nine percent (9%) per annum for unpaid contributions to the Central Pension Fund; and (3) the rate provided for by 26 U.S.C. § 6621 for unpaid contributions to the Union Training Fund and unpaid Union deductions. Plaintiffs are also entitled to liquidated damages comprising the interest on the unpaid Union Training Fund contributions for this period and the greater of the interest on the unpaid Engineers Fund and Central Pension Fund contributions for this period or twenty percent of the unpaid Engineers Funds and Central Pension Fund contributions.